IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:08-CV-24-BO

| | |
|---|---|
| RAY COMMUNICATIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| CLEAR CHANNEL COMMUNICATIONS, INC., ) | |
| CLEAR CHANNEL BROADCASTING, INC., and ) | |
| KATZ MEDIA GROUP, INC., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter comes before the Court on Defendants' Motions to Dismiss. Plaintiff's allege trademark infringement claim under the Lanham Act as well as a claim under North Carolina's Unfair and Deceptive Trade Practices Act. Defendants contend this Court cannot properly assert personal jurisdiction over them. Alternatively, Defendants contend Plaintiff has failed to sufficiently allege claims under either the Lanham Act or North Carolina's Unfair and Deceptive Trade Practices Act. Defendants also move for a More Definite Statement. For the reasons set out below, Defendants' Motions to Dismiss and Motions for a More Definite Statement are DENIED.

BACKGROUND

Plaintiff Ray Communications, Inc., is a corporation organized under the laws of Virginia with its principal place of business in North Carolina. Since 1972, Plaintiff has owned the AGRINET mark registered with the U.S. Patent and Trademark Office ("PTO") for educational

1

services rendered through the medium of radio.

Defendant Clear Channel Communications, Inc., is organized under the laws of Texas. Defendant Clear Channel Broadcasting, Inc., is organized under the laws of Texas. Defendant Katz Media Group, Inc., is organized under the laws of Delaware with its principal place of business in New York. The latter two Defendants are each wholly-owned subsidiaries of Defendant Clear Channel Communications. Defendant Clear Channel Communications, Inc., owns 1005 radio stations, including four stations in Raleigh-Durham, North Carolina and five stations in Greensboro-Winston-Salem-High Point, North Carolina. In all, Defendant Clear Channel Communications, Inc., owns twenty radio stations in North Carolina. Defendant Katz Media Group, Inc., represents more than 2,600 radio stations in the United States. Further, it maintains twenty-one regional offices around the country, including one in Raleigh, North Carolina. This regional office shares the same address in Raleigh, North Carolina as the four radio stations owned and operated by Defendant Clear Channel Communications, Inc.

Plaintiff alleges Defendants have used in commerce the mark of AGRINET to identify agricultural news programs on their radio stations. In particular, Plaintiff alleges Defendants have used the identifiers OKLAHOMA AGRINET, TEXAS AGRINET, TENNESSEE AGRINET, OHIO AGRINET, KENTUCKY AGRINET, ALABAMA AGRINET, and/or AGRINET OF THE HIGH PLAINS. Plaintiff alleges that Plaintiff has previously objected to Defendants' use, but Defendants have continued to use the mark. Plaintiff does not allege that Defendants have used the AGRINET mark in North Carolina

On June 20, 2008, Plaintiff commenced this action. On July 15, 2008, Defendants each filed a motion to dismiss with this Court.

DISCUSSION

I. North Carolina Long-Arm Statute

A court does not have personal jurisdiction over a nonresident defendant unless jurisdiction is consistent with the forum state's long-arm statute and with due process. *See, e.g., Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004). North Carolina's long-arm statute is construed to reach the limits of constitutional due process. *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Because the Court decides this motion to dismiss motion without conducting an evidentiary hearing, Plaintiff need only make a prima facie showing of persona jurisdiction. *Mylan Labs., Inc., v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).

Under North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4(4)(b), Plaintiff must claim: (1) injury to person or property within North Carolina; (2) arising out of Defendants' acts outside the state; (3) at or about the time Defendants' products were being used or consumed within North Carolina in the ordinary course of trade. *Dowless v. Warren-Rupp Houdailles, Inc.*, 800 F.2d 1305, 1307 (4th Cir. 1986). Plaintiff has established the existence of jurisdiction by a prima facie showing that these statutory requirements have been met.

First, Plaintiff alleges injuries resulting from Defendants' unfair and deceptive trade practices and trademark infringement. Both injuries have been recognized as claims of injury under § 1-75.4(4). *See Dowless*, 800 F.2d at 1307; *Vishay Intertechnology, Inc. v. Delta International Corp.*, 696 F.2d 1062, 1064 (4th Cir. 1982). Second, this local injury resulted from Defendants' actions outside of North Carolina: Defendants' alleged use of the AGRINET mark

3

occurred in a number of states other than North Carolina.

Finally, Plaintiff alleges Defendants own, operate and manage twenty radio stations in North Carolina. While Plaintiff does not allege its causes of action relate to Defendants' activities in North Carolina, this point is not determinative in the jurisdictional analysis. "There is no requirement that the cause of action, pursuant to which the jurisdictional claim is raised, be related to the activities of the defendant which gives [sic] rise to the in personam jurisdiction." *Dowless*, 800 F.2d at 1307 (quoting *Hankins v. Somers*, 39 N.C. App. 617, 251 S.E.2d 640, *cert. denied*, 297 N.C. 300, 254 S.E. 2d 920 (N.C. App. 1979))(internal quotations omitted).

Having determined the North Carolina long-arm statute applies to Plaintiff's cause of action, the Court must also determine the exercise of jurisdiction will not violate the due process clause of the United States Constitution. Due process requires a defendant to have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The extent of the contacts needed for jurisdiction turns on whether the claims asserted against a defendant relate to or arise out of the defendant's contacts with the forum state. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

If the defendant's contacts with the state are the basis for the suit, specific jurisdiction may exist. *Id*. In determining specific jurisdiction, the court considers "(1) the extent to which the defendant purposefully avail[ed] itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id*. (internal

4

quotations omitted).

If the defendant's contacts with the forum state are not the basis of suit, general jurisdiction may "arise from the defendant's general, more persistent, but unrelated contacts with the State." *ALS Scan, Inc.*, 293 F.3d at 712. To establish general jurisdiction, the defendant's contacts with the forum state must be "continuous and systematic." This standard for general jurisdiction is more demanding than the one used to establish specific jurisdiction. *Id.* (citing *Helicopteros*, 466 U.S. at 414-16).

Here, Defendant Clear Channel Communications, Inc., through subsidiaries, owns, operates and manages twenty radio stations in North Carolina. Defendant Katz Media Group, Inc., maintains two subsidiaries that are registered to do business in North Carolina and actually do business in Charlotte, NC. Moreover, Defendants Katz Media Group, Inc. is identified in disclosure documents provided by Defendant Clear Channel Communications, Inc., to the Securities and Exchange Commission as well as investors as one of its subsidiaries. In addition, Defendants Katz Media Group, Inc. and Clear Channel Communications, Inc., appear prominently on one another's website, and list the same address for each's Raleigh, NC office.

While "contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity[,]" *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276-277 (4th Cir. 2005), personal jurisdiction may extend to the parent corporation when a parent entity exerts a significant degree of control over the activities of the subsidiary. *See Mylan Labs.*, 2 F.3d at 60. Further, the "continuous and systematic" operation of these radio stations in North Carolina constitute the required minimum contacts. By these activities, Defendants Katz Media Group, Inc. and Clear Channel Communications, Inc., have "purposefully avail[ed]" themselves of the privilege of

5

conducting business within North Carolina, "thus invoking the benefits and protections of its laws." *Dowless*, 800 F.2d at 1308 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). This Court's assertion of personal jurisdiction and application of the North Carolina long-arm statute does not violate the due process of Defendant Clear Channel Communications, Inc.

II. 12(b)(6) Motion

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Though specificity is not required, a complaint must allege enough facts to state a claim to relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 125 S.Ct. 1955, 1965 (2007). If the factual allegations to not nudge the plaintiff's claims "across the line from conceivable to plausible," the "complaint must be dismissed." *Id.* at 1973.

    A.    *Claims under the Lanham Act*

To prevail under a cause of action for trademark infringement under the Lanham Act, the trademark holder must prove:(1) that it possesses a mark; (2) that the [opposing party] used the mark; (3) that the [opposing party's] use of the mark occurred "in commerce"; (4) that the [opposing party] used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the [opposing party] used the mark in a manner likely to confuse consumers. *Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005)(citing *PETA v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001)(citing 15 U.S.C. §§ 1114, 1125, and *Lone Star Steakhouse & Saloon, Inc., v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995))).

6

Plaintiff has sufficiently alleged its claims under the Lahham Act. Plaintiff alleges that (1) it possesses the AGRINET mark and that (2) Defendants have used the AGRINET mark (3) "in commerce" as a part of the (4) marketing and advertising for certain agricultural news programs carried by radio stations owned by Defendants. In addition, Plaintiff alleges Defendants' usage causes "likelihood of confusion and/or confusion as to the source, origin, sponsorship or approval of the services identified by the mark AGRINET..." (Compl. at 3). Plaintiff has sufficiently alleged a claim for trademark infringement under the Lanham Act.

B. *Claim under the North Carolina Unfair and Deceptive Trade Practices Act*

To state a claim for unfair and deceptive trade practices under North Carolina General Statutes § 75-1.1, a plaintiff must establish that (1) the defendants "committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Freeman v. Duke Power Co.*, 114 Fed. Appx. 526, 535 (4th Cir. 2005)(quoting *Dalton v. Camp*, 353 N.C. 647, 548 S.E. 2d 704, 711 (N.C. 2001)).

Here, Plaintiff alleges that (1) Defendants committed trademark infringement, (2) such trademark infringement occurred in the marketing and advertising of Defendants' agricultural news program, and (3) the trademark infringement has caused Plaintiff damages related to Plaintiff's broadcast of agricultural radio. Plaintiff has sufficiently alleged a claim under the North Carolina Unfair and Deceptive Trade Practices Act.

III. Motion for More Definite Statement

Defendants also request a more definite statement as to Plaintiff's claims. Under FED. R. CIV. P. 12(e), a Court may require a party to cure defects of a vague or ambiguous pleading so as to allow the opposing party to frame a responsive pleading. The Court has discretion to treat

7

vague pleadings under either Rule 12(b)(6) or Rule 12(e). *See* 5C C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1376 (3d ed. 2004) ("If the pleading is impermissibly vague, the court may act under Rule 12(b)(6) or Rule 12(e), whichever is appropriate, without regard to how the motion is denominated.").

Judged by the standard set forth in Rule 12(e), the Plaintiff's complaint was sufficient to require Defendants to respond. The complaint stated the jurisdictional grounds for the claim, identified the statutes Defendants have allegedly violated, described the nature of the violations, specified how and in which programs Defendants allegedly used the Plaintiff's trademark, and notified Defendants of the relief Plaintiff seeks. Defendants can rely on their records to admit or deny any of the charges regarding the alleged use of the Plaintiff's trademark. Defendants' Motions for a More Definite State are DENIED.

## CONCLUSION

Accordingly, Defendants' Motions to Dismiss and Motions for a More Definite State are DENIED.

SO ORDERED.

This __19__ day of January, 2009.

Terrence W. Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

8