IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:08-CV-24-BO

| | |
|---|---|
| RAY COMMUNICATIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| CLEAR CHANNEL ) | |
| COMMUNICATIONS, CLEAR ) | |
| CHANNEL BROADCASTING, INC., ) | |
| KATZ MEDIA GROUP, INC., and ) | |
| KATZ COMMUNICATIONS, INC. ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the Court on Defendants' Motion for Attorneys Fees and Defendants' Motion for Bill of Costs. Defendants' Motion for Attorney Fees is DENIED and Defendants' Motion for Bill of Costs is GRANTED in part.

I. FACTS

Plaintiff sued Defendants in June 2008 for Trademark Infringement.

Plaintiff Ray Communications, Inc. is a radio network owned by William and Lisa Ray. Plaintiff currently owns the federal registration for the service mark "Agrinet," short for Agricultural Network. The mark was initially owned by Charlottesville Broadcasting Corporation, which licensed the trademark to Mr. Ray in 1976 and granted him a full assignment of its rights in 1986. Mr. and Mrs. Ray are the corporate representatives in this suit.

Defendant Clear Channel Communications, Inc. is also a radio network. As Clear Channel Communications is the parent company of the other three Defendants, the Court will refer to the Defendants collectively.

Beginning in the late 1970's and early 1980's, Defendants' predecessors began using the terms "Oklahoma Agrinet," "Tennessee Agrinet," and "Kentucky Agrinet" to identify their programming and in marketing without permission. It is uncontested that Plaintiff was aware of this use. See, e.g., W. Ray Dep. 253:20-254:4, June 23, 2010. Mr. Ray claims that some time before 1986, he gave several oral licenses without consideration to Defendants' predecessors'[1] employees. These alleged licenses were to Jimmy "Kit" Stubblefield for Kentucky Agrinet, Dan Gordon for Tennessee Agrinet, and Ron Hays for Oklahoma Agrinet.

Plaintiff states that it terminated the license to Stubblefield in 1992, terminated the license to Dan Gordon when his station was bought by Defendants in fall 1997, and terminated the license to Ron Hays in 2006. Pl.'s Resps. to Def. Clear Channel Broad., Inc.'s 1st Set of Interrogs., p. 5-6, Oct. 26, 2009.

Jack Crowner, one of Defendants' Broadcasters for Kentucky Agrinet, testified that Mr. Ray approached him at a National Association of Farm Broadcasters (NAFB) conference in 1992 and said he wanted Crowner to stop using Kentucky Agrinet. Crowner testifies that he did not believe Plaintiff had a legal right to stop his station from using the mark, but since Mr. Ray was his friend, Crowner changed his station's mark from Kentucky Agrinet to "Kentucky Agnt" as "strictly a favor." Crowner Dep. 43:17-44:18, Jul. 5, 2010. Kentucky Agrinet is the only mark

---

[1] Defendants acquired the property known as the Oklahoma Agrinet, operating as part of the Oklahoma News Network, on October 1, 1984 from Broad Street Communications Corp. Defendants acquired the property known as the Tennessee Agrinet from Paxson Communications Corp. in fall 1997. Storey Dep. 8:24-9:3, May 25, 2010; Crowner Dep. 78:7-79:14, Jul. 5, 2010. Defendants acquired the property known as the Kentucky Agrinet, operating as part of the Kentucky Network from The American Network Group, Inc. on January 31, 1992. Ex. MM.

Defendants permanently stopped using at the request of Plaintiff.[2] Defendants presently continue to use Oklahoma Agrinet and Tennessee Agrinet. Defendants have also used several marks that Plaintiff admits never licensing or otherwise granting permission for use, including Alabama Agrinet, Agrinet of High Plains (based in Texas), and the term Agrinet alone without a geographic modifier.

Defendants maintain that they never had any license agreement with the Plaintiff.

On December 17, 2010, the Court granted Defendants summary judgment. The Court found that the evidence overwhelmingly showed that there never was a license for Oklahoma Agrinet. See infra Part II.B.a. The Court also assumed, without deciding, that Plaintiff had a license agreement with Defendants for Tennessee Agrinet from approximately 1986 to 1997, and for Kentucky Agrinet from approximately 1986 to 1992.

Ultimately, the Court concluded that the Plaintiff was aware of unlicensed usage since 1978, unreasonably delayed in enforcing its rights for over 30 years, and that the Defendant was prejudiced by such delay. According, the Defendant prevailed on its affirmative defense of laches.

## DISCUSSION

### A. Recovery of Attorneys' Fees under the Lanham Act

Defendants are not entitled to reasonable attorneys' fees under the Lanham Act.

Under § 35(a) of the Lanham Act, the Court "in exceptional cases may award reasonable attorneys' fees to the prevailing party." 15 U.S.C. § 1117(a). Generally, an "exceptional case" is one where the defendant's conduct was in "bad faith." *Also See Employers Council on Flexible*

---

[2] Defendants also stopped using Tennessee Agrinet for approximately a year, but as this was for settlement negotiations, it is inadmissible evidence. Fed. R. Evid. 408; Fiberglass Insulators, Inc. v. Dupuy, 856 F.2d 652, 654-55 (4th Cir. 1998).

*Compensation v. Feltman*, 384 Fed. Appx. 201, 207 (4th Cir. 2010).[3] An award "[is] not to be made as a matter of course, but rather as a matter of the court's considered discretion ...." *Ale House Management, Inc. v. Raleigh Ale House, Inc.*, 205 FJd 137, 144 (4th Cir. 2000).

The analysis of whether a defendant's behavior was in "bad faith" focuses on whether its actions underlying the trademark infringement were "malicious, fraudulent, willful or deliberate in nature." *See Employers Council on Flexible Compensation v. Feltman*, 384 Fed. Appx. 201, 207 (4th Cir. 2010)(citations omitted). However, such underlying issues are typically not relevant to trademark infringement plaintiffs. Thus, an analysis of "bad faith" on the part of a trademark infringement plaintiff must necessarily take into account the plaintiff's litigation conduct.

In evaluating whether a Plaintiff showed bad faith, relevant factors include the existence of economic coercion, groundless arguments, and failure to cite controlling law. <u>Ale House Management, Inc.</u>, 205 F.3d at 144. "[T]he good faith, but ultimately unsuccessful, assertion of a questionable claim or controversial legal theory does not suffice to warrant an award of attorney's fees, even if it turns out to be expensive for the prevailing party." *Daesang Corp. v. Rhee Bros., Inc.* 2005 WL 1163142 at *15 (D. Md.) (citing *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir. 2001»).

Here, the Plaintiff's conduct was in no way exceptional. Despite the ultimate lack of factual support for Plaintiff's claims and the parties' discovery disputes in this case, there is no

---

[3] Previously, the Fourth Circuit had laid out a dual standard for determining whether a case is "exceptional." Under this dual standard, a prevailing plaintiff was required to demonstrate that a defendant acted in bad faith, while a prevailing defendant was only required to show the plaintiff acted in "something less than bad faith." *Scotch Whisky Assoc. v. Majestic Distilling Co.*, 958 F.2d 594, 599 (4th Cir. 1992). This dual standard however, has been rejected by the Supreme Court. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 5226, n.19 (1994) (stating that, in the context of attorneys' fees awarded under the Copyright Act, "prevailing plaintiffs and defendants are to be treated in an evenhanded manner."))

indication that Plaintiff acted in bad faith. Thus Defendant's Motion for attorney fees and costs is denied.

### B. Recovery of Costs

As the prevailing party, the Defendants are entitled to its litigation costs in this case, other than attorney fees. Fed. R. Civ. P. 54(d)(1). Defendants' Bill of Costs request $23,196.31 spent over the three years of this case:

| Cost Description | Amount Sought by Defendants |
| --- | --- |
| Service of Summons and Subpoena | $2,034.25 |
| Printed and Electronically Recorded Deposition Transcripts | $18,070.46 |
| In-House Copying/Printing | $1,483.75 |
| Fees for Witnesses | $601.00 |
| Copies made by Non-Parties | $1,006.85 |
| **Total** | **$23,196.31** |

Plaintiff requests that the Court stay consideration of the Bill of Costs until Plaintiff's appeal of the Court's order granting Defendants' summary judgment has been resolved. Plaintiff provides no authority for the requested stay. Moreover, Rule 54(d) of the Federal Rules of Civil Procedure, which governs the timing of submissions of bills of cost, does not provide for any such stay, nor does Local Civil Rule 54.1. Accordingly, Plaintiff's request for such a stay is denied.

Plaintiff also opposes the extent of Defendants' requested costs. The Court approves all costs except that of the video recordings of the depositions and that for including exhibit duplicates in the deposition transcripts.

### i. Video depositions

Defendants have applied for $18,070.46 for deposition costs. These costs include both stenographic transcription and video recordings. The Court declines to tax Plaintiff for this full amount, allowing only the costs for the stenographic transcriptions

In the Fourth Circuit, a party can recover the costs of both stenographic transcription of a deposition and videographer services only if the party can show that both recordings were "necessarily obtained for use in the case." *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 449 (4th Cir. 1999). A party's desire to enhance its chance of effectively impeaching a witness at trial is not sufficient cause for both methods of recordation. *Id.*

Here, Defendants claim the video recordings were necessary to effectively impeach Mr. Ray during a potential trial. They also argue the video was necessary because "most" of its witnesses were from out of state, and it was uncertain whether they could attend a trial in North Carolina. As already stated, effective impeachment is not sufficient cause for video recordings. Additionally, the Defendants' concern that their witnesses would not be able to attend trial is merely speculative. Thus, the costs of the video recordings will be excluded from Plaintiff's costs.

### ii. Depositions not used to support summary judgment

Plaintiff next argues that it should only be taxed for the deposition transcripts used in the summary judgment briefing. The Court disagrees.

In the Fourth Circuit, the costs of a deposition transcript are recoverable "when the taking of a deposition is reasonably necessary at the time of its taking." *LaVay Corp. v. Dominion Federal Savings and Loan Assoc.*, 830 F.2d 522, 528 (4th Cir. 1987). It is not necessary for depositions to be used in trial or dispositive motion briefing for a party to recover those costs.

*See Id.* at 528 (taxing costs for depositions not admitted at trial); *Ferris v. AAF-McQuay, Inc.*, No. 5:06-cv-00082, 2008 U.S. Dist. LEXIS 13591 at *5-*6 (W.D. Va. Feb. 21, 2008) (taxing costs for depositions not used in summary judgment briefing).

Thus, the Court will tax Plaintiffs for all the stenographic transcriptions, regardless of whether they were used for summary judgment.

### iii. Court Reporter's Fees for Shipping and Handling of Deposition Transcripts

Next, Plaintiff objects to Defendants' recovery of the reporter's postage and handling costs associated with the deposition transcripts.

Costs for handling and delivery of deposition transcripts are reasonable under 28 U.S.C. § 1920(2), which allows for "fees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Local Civil Rule 54.1 specifically allows for taxation of "the reporter's fee and charge for the original transcript of the deposition." E.D.N.C. Civ. R. 54.1(c)(1)(a). *Also see, Kennedy v. Joy Techs.*, 484 F. Supp. 2d 502, 504 (W.D.Va. 2007) (court reporter's postage and handling fee for deposition transcript "is covered by § 1920(2)").

Thus, Plaintiff will be taxed for these costs.

### iv. Costs for Exhibits to Deposition Transcripts

The Court agrees with Plaintiff's request to exclude the costs for most of the exhibits in the deposition transcripts. *See Scallet v. Rosenblum*, 176 F.R.D. 522, 529 (W.D. Va. 1997)(denying "costs for the inclusion of exhibits in the deposition transcripts as these are primarily for the convenience of counsel, who often has a copy of the exhibit at hand already").

The Court does allow however, the costs for exhibits in the deposition transcript of William "Gary" Cooper as Mr. Cooper produced 809 pages of documents to both parties for the first time at his deposition.

### v. Costs for Service of Subpoenas on Lindsay Hill and Andy Vance

Plaintiff improperly objects to Defendants' recovery of the fees associated with service of subpoenas on Lindsay Hill and Andy Vance.

Both Ms. Hill and Mr. Vance were served with a subpoena for documents (subpoena *duces tecum*) and a subpoena for deposition testimony. While Plaintiff correctly notes that the depositions of Ms. Hill and Mr. Vance were cancelled, Defendants only seek reimbursement of the costs associated with service of the subpoenas *duces tecum* on these witnesses .

Because Defendants incurred the costs for service of the two subpoenas *duces tecum* on Ms. Hill and Mr. Vance, such costs should be taxed against Plaintiff.

### vi. Costs for Witness Fees

Plaintiff also objects to Defendants' recovery of the amount paid to Richard Parrish in connection with his deposition, claiming no explanation was given for this fee.

The amounts paid to Mr. Parrish are properly taxable as witness and mileage fees. Mr. Parrish agreed to travel from his home address in Oklahoma City, Oklahoma for his deposition. Oklahoma City is approximately 120 miles from Broken Arrow. In exchange for Mr. Parrish's accommodation for all the parties involved, Defendants properly paid him the amount of $161.00, representing a $40.00 witness fee and a $121.00 roundtrip mileage fee.[4]

### vii. Costs for Private Process Server Fees

Plaintiff also objects to the $601 sought by Defendants' in connection with the service of subpoenas on each deponent on the grounds that such fees are "excessive."

Defendants employed Special Delivery Service, Inc. to coordinate the service of subpoenas in this case. Over 20 depositions were taken in 8 states over the course of this lawsuit.

---

[4] Notably, service of process fees to Mr. Parrish were avoided because he agreed to accept service of the subpoena and appear at his deposition voluntarily.

The Defendants did not seek special services from the process servers, such as "expedited" or "rush" service. The Court finds that the fees for service of the subpoenas is reasonable and not excessive. According, such costs should be taxed against Plaintiff in the amount claimed.

vi. Plaintiff's Objections to Costs for Photocopies

Finally, Plaintiff objects to the $ 1,483.75 for in-house copying costs and $ 1,006.85 for copying costs paid to non-parties, arguing the costs were not properly explained and unnecessary.

The in-houses costs include the copying of 22 depositions, as well as 2,300 pages of paper presented to the Court's chambers as courtesy copies in accordance with the Court's Practice Preferences. The copying costs from non-parties mostly consist of payment to Henderson Communications LLC and the University of Illinois at Urbana-Champaign for tracking down and copying archived National Association of Farm Broadcasters Directories spanning three decades.

The Court finds these costs were in fact properly delineated and necessary to this case.

## CONCLUSION

Defendants' Motion for Attorney Fees is DENIED and Defendants' Motion for Bill of Costs is GRANTED in part.

Defendants are ORDERED to resubmit a bill of costs for approval that excludes costs for the video recorded depositions. Defendants should also exclude the costs for including exhibits in the deposition transcripts, besides the exhibits in Mr. Cooper's deposition. The Court APPROVES all other submitted costs.

SO ORDERED, this 26 day of July, 2011.

                                            TERRENCE W. BOYLE
                                            UNITED STATES DISTRICT JUDGE